22 C. C. P. A. (Patents)

## In re YOUNG.

Patent Appeal No. 3432.

Court of Customs and Patent Appeals.
March 25, 1935.

Chappell & Earl, of Kalamazoo, Mich., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming the decision of the Examiner, rejecting six claims (Nos. 4 to 9 inclusive) of appellant's application for patent relating to machines for making reinforced concrete beams. Three claims, Nos. 1, 2, and 3, stand allowed, and are not here involved.

Claim 4 is quoted as illustrative; claim 6 is also quoted, because of a particular limitation contained therein:

"4. In a machine for making concrete beams, the combination of a main track or way, a carriage therefor, a bed plate on the top of said carriage with apertures therethrough, a series of elevating shoes disposed on the said bed plate within said apertures, vertical plungers attached thereto for elevating the same, a common leveling elevator bar connected to the said plungers, means to elevate said bar, a palette with upwardly curbed longitudinal central portion disposed above the said bed plate and elevating shoes, side bars connected to the said bed plate for cooperation with the said palette, the said palette being adapted to support concrete reinforced structures with longitudinal members connected by cross bars supported by suitable chairs, compression rollers with midribs of successively increasing size and overlapping contour disposed above the said palette and in position to act successively on the contents thereof when the carriage is advanced, and a concrete hopper disposed to deliver to the said mold."

"6. In a machine for making concrete beams, the combination of a main track or way, a carriage therefor, a bed plate on the top of said carriage, a palette with upwardly curved longitudinal central portion disposed above the said bed plate, side bars connected to the said bed plate for cooperation with the said pallette, concrete reinforced structures with longitudinal members connected by cross bars supported by suitable chairs on the said palette, compression rollers with mid-ribs of successively increasing size and overlapping contour disposed above the said palette and in position to act successively on the contents thereof when the carriage is advanced, and a concrete hopper with delivery spout disposed to deliver to the said mold."

All the other claims are apparently broader in scope than claim 4.

The references cited are: Anderson, 832,441, Oct. 2, 1906; Trevillian, 1,342,192, June 1, 1920; Craig, 1,534,361, April 21, 1925.

All of the appealed claims were rejected by both tribunals of the Patent Office for

lack of patentability in view of the prior art, and claim 6 upon the further ground that it includes the articles operated upon by the machines, that is, to quote from the claim, "concrete reinforced structures with longitudinal members connected by cross bars supported by suitable chairs on the said palette," as a part of the combination.

The brief for appellant states: "The machine is organized specifically for manufacturing reinforced I-beams having longitudinal metallic head and base reinforcing member with cross shear members."

The disclosure, in so far as here material, is of a device having a carriage, carried upon a track, the carriage being supported upon a detachable palette designed to serve as a mold for one side of the beam, while side and end members are designed to form the other parts of the mold. Into the mold there are placed reinforcing members comprising rods connected by vertical crossbars, after which the concrete material is introduced from a hopper. The mold is then moved along the track beneath a series of stationary rollers. These rollers have ribs projecting from their middle portions, the width of the ribs increasing upon the successive rollers. It is the function of the rollers to compress the plastic concrete into proper form about the reinforcing members, and it is claimed that through the instrumentality of the successive mid-ribs the mix is kneaded in a manner which spreads it toward the head and base of the beam and there compacts it in a desirable manner. The completed beam is finally ejected upon the palette by plungers which act upon shoes underneath the palette.

The patent to Anderson is for a machine for the manufacture of building blocks. The disclosure is of a device having channels or troughs over which are operated carriages equipped with rollers. Molding material is introduced into the channels and when the rollers are rolled therethrough shapes are produced for casting cement blocks.

We do not find in this patent any teaching that the rollers operate upon the blocks themselves in the process of molding or shaping them. The sole function of Anderson's rollers seems to be that of compressing the sand or other molding material in the trough so as to form the shapes into which the blocks are ultimately to be molded.

We feel, therefore, that the Anderson patent has little if any relation to the device of appellant.

The patent to Craig is for a block-making machine and apparently was cited principally because of its showing relating to the ejection of the finished blocks by the elevation of bars actuated by cams rolling over cam tracks.

With the possible exception of claim 4, supra, we do not find the ejection element defined in any of the claims on appeal, although the brief for appellant alludes to claims 5 and 6 as also containing it. It seems to be present in one or more of the allowed claims.

The Craig patent, it is believed, substantially anticipates the ejection feature of appellant's device. This fact, however, under the rule stated by this court in the case of In re Luks, 69 F.(2d) 552, 21 C. C. P. A. (Patents) 1005, would not of itself defeat appellant's combination claims, if found otherwise patentable.

The patent to Trevillian relates to an apparatus for molding plastic materials, "such as are used in the manufacture of tile, bricks, coping, etc."

Palettes of whatever configuration may be necessary to manufacture the particular form of article desired are provided, these to be carried upon a flanged-wheel conveyor. The material to be molded is conveyed to the palettes through a hopper, and the conveyor, traveling upon guides, moves the loaded palettes forward under mechanisms which perform the various operations upon the material that are required to produce the desired article, these operations being defined in the specification as "leveling," "tamping," "troweling," "smoothing," and "finishing."

The mechanism for the finishing operation seems to be the feature of the Trevillian device regarded by the tribunals of the Patent Office as substantially anticipating appellant's mid-rib rollers. In this feature there is disclosed a roller mounted upon a shaft; the roller, as shown in the drawings, having enlarged portions or ribs, its ends being flanged and so arranged in relation to the palette as to shear off the edges of the product in a smooth manner.

It does not appear that the rollers of the Trevillian device, above alluded to, perform any function in the actual shaping or molding of the articles which it is designed to produce. Trevillian's specification recites that: "Preferably the roll is revolved at a comparatively low speed in a direction counter to that of the travel of the product

998

at the point of contact, so as to produce a very smoothly finished surface."

It appears from a study of his patent that Trevillian's rollers merely operate to finish or smooth the surfaces of articles which have been already shaped by the preceding operations.

Such appears to be the finding of the Examiner, which was approved by the Board of Appeals, but the Examiner says: "However, it is held that even smoothing necessarily necessitates some displacement of material, however slight that displacement might be."

The Examiner also calls attention to the fact that certain of the claims on appeal, such as No. 9, merely call for a roller with a mid-rib section thereon followed by a statement of function.

We do not understand the tribunals of the Patent Office to hold that the references cited of themselves constitute an anticipation of appellant's device, but rather it is held that, in view of them, no invention is involved.

The board says: "We can see no invention in employing a roller molding action for the upper portion of a beam and we agree with the examiner that it would be obvious to those skilled in the art that a plurality of rollers of different shapes may be employed when it is not expedient to complete the molding action with one roller."

We regard the foregoing as a correct statement, and a careful analysis of the appealed claims leads us to the conclusion that any structure which they specify, that is not included in the allowed claims, is structure designed for none other than the operation as described in the statement.

It is true that claim 6, supra, does include as an element the material being worked upon; that this was one ground upon which the Examiner rejected it, and that the board approved such ground.

We do not deem it necessary to determine whether, were the claim otherwise patentable, the inclusion of this limitation should of itself prevent its allowance, but we do hold that its inclusion may not lend patentability, since the claim is not otherwise allowable.

The decision of the Board of Appeals is affirmed.

Affirmed.